UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA
MINNEAPOLIS DIVISION

In re:

Jeffrey Dennis DeHaan

Chapter 13
Case No. 14-44153 (RJK)

Debtor.

NOTICE OF HEARING AND
MOTION FOR RELIEF FROM
AUTOMATIC STAY

---

TO:  Jeffrey D. DeHaan and Sarah K. DeHaan, INCLUDING TRUSTEE AND OTHER INTERESTED PARTIES as specified in Local Rule 9013-3(a).

1.      Citibank, N.A., not in its individual capacity, but solely as trustee of NRZ Pass-Through Trust VI as serviced by Fay Servicing LLC ("Movant") by its undersigned attorneys, moves the court for the relief requested below and gives notice of hearing herewith.

2.      The Court will hold a hearing on this motion at 9:00am on Thursday, May 17, 2018, in Courtroom 8 West, 8th Floor, 300 S 4th St, Minneapolis or as soon thereafter as counsel can be heard.

3.      Any response to this motion must be filed and delivered not later than on Friday, May 11, 2018, which is five days before the time set for the hearing (including Saturdays, Sundays, and Holidays). UNLESS A RESPONSE OPPOSING THE MOTION IS TIMELY FILED, THE COURT MAY GRANT THE MOTION WITHOUT A HEARING.

4.      This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334, Federal Rules of Bankruptcy Procedure 5005 and Local Rule 1070-1, and is a core proceeding.  The petition commencing

this Chapter 13 case was filed on October 14, 2014. The case is now pending in this Court.

5. This motion arises under 11 U.S.C. § 362(d) and Federal Rules of Bankruptcy Procedure 4001. This motion is filed pursuant to Federal Rules of Bankruptcy Procedure 9014 and Local Rules 4001-1 and 9013. Movant requests relief with respect to a mortgage lien encumbering real property of debtors.

6. The debtors are the owners of real property located at 400 Sanford Road, Benson, MN 56215, Swift County, legally described as:

Lot One (1), Block Two (2), Hawleywood Second Addition, Swift County, Minnesota.

7. The indebtedness of Jeffrey D. DeHaan and Sarah K. DeHaan is evidenced by a promissory note and mortgage dated August 10, 2006, filed in the office of the registrar of titles August 23, 2006 as document no. 6107 on certificate of title no. 1946. The mortgage was subsequently assigned to Movant. The note, mortgage, and assignment of mortgage are attached as Exhibit C.

8. Mortgage payments received from the borrowers are credited to the month due, pursuant to the terms of the mortgage and note. (See Exhibit C Mortgage, paragraph 2)

9. The debtors filed a Chapter 13 modified plan on April 28, 2015 [Docket No. 17], which was confirmed by Court Order on June 25, 2015 [Docket No. 18]. The confirmed plan provided among other terms, the following:

**6. HOME MORTGAGES IN DEFAULT [§ 1322(b)(5) and § 1322(e)]** – The trustee will cure defaults on the following claims secured only by a security interest in real property that is the debtor's principal residence. The debtor will pay the payments that come due after the date the petition was filed directly to the creditors. The creditors will retain liens. **All following entries are estimates**. The trustee will pay the actual amounts of default.

Notwithstanding the foregoing provision six of said plan, the debtors have not maintained current post-petition payments with respect to said note and mortgage while this case is pending. The debtors are therefore in default under the terms of the confirmed Chapter 13 plan.

10. As of February 26, 2018, the debtors are delinquent in the amount of $73,977.06, which represents approximately thirty-six (36) post-petition payments. The last payment was received on December 15, 2015 and applied to the February 1, 2015 payment, pursuant to the terms of the mortgage and note. As of the hearing date the next payment for March 1, 2018 and April 1, 2018 will also be due. A detailed payment history is being filed herewith. (See Movant Affidavit & Exhibit B, Local Form 4001-1)

11. The debtors' thirty-six (36) month delinquency in the amount of $73,977.06 under the terms of the Mortgage constitutes "cause" within the meaning of 11 U.S.C. § 362(d)(1), entitling Movant to relief from automatic stay.

12. The total unpaid payoff balance due under the mortgage and note as of February 26, 2018 is $340,573.57. (See Affidavit of Movant, paragraph 7).

13. The debtor scheduled the value of the property as $204,200.00. The Swift County Assessor's office has estimated the market value as $237,000.00 (See Exhibit A, County Value).

14. By reason of the foregoing, the debtors are in default on payments under the note, mortgage, and Chapter 13 plan. Movant is inadequately protected and desires to protect its interest in the

property and requests the court to vacate the stay of actions and allow enforcement of the mortgage pursuant to Minnesota law.

15.   The Movant further seeks relief in order to, at its option, offer, provide and enter into any potential forbearance agreement, loan modification, refinance agreement or other loan workout/loss mitigation agreement and allow Movant to contact the debtors via telephone or written correspondence to offer such an agreement, at its discretion.

16.   By reason of the foregoing, Movant is entitled to have the automatic stay lifted and vacated so it can recommence the mortgage foreclosure action pursuant to Minnesota Statutes.   The Movant also requests that any order granting its motion be effective immediately, notwithstanding Federal Rules of Bankruptcy Procedure 4001(a)(3).   This motion is likely to go by default. Movant remains inadequately protected. The debtors are due for the month of March 15, 2015, and there is no equity in the property.   Each day that passes results in lost interest, which is prejudicial to Movant; therefore, Movant believes there is no reason for delaying entry of the order.

**WHEREFORE**, Movant, by its undersigned attorney, moves the Court for an order modifying the automatic stay of 11 U.S.C. § 362(a) so as to permit Movant to foreclose its mortgage on the Property and for such other relief as the Court may deem to be just, fair and equitable.

Dated:  April 27, 2018

USSET, WEINGARDEN & LIEBO, P.L.L.P.


By:/E/ Kevin T. Dobie
    Kevin T. Dobie #388322
    Attorney for Movant
    4500 Park Glen Road, #300
    Minneapolis, MN 55416
    (952) 925-6888
    kevin@uwllaw.com

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA
MINNEAPOLIS DIVISION

IN RE:

                                        CHAPTER 13
JEFFREY DENNIS DEHAAN            CASE NO. 14-44153 (RJK)

                DEBTOR

---

AFFIDAVIT OF   James M. Stefani

IN SUPPORT OF MOTION BY CITIBANK, N.A., NOT IN ITS INDIVIDUAL
CAPACITY, BUT SOLELY AS TRUSTEE OF NRZ PASS-THROUGH TRUST VI
AS SERVICED BY Fay Servicing LLC
FOR RELIEF FROM THE AUTOMATIC STAY


   James M. Stefani   , being first duly sworn on oath, deposes
and states as follows:

    1.    I am over the age of eighteen and am authorized to
make this affidavit on behalf of Fay Servicing LLC.

    2.    I am presently a AVP of Bankruptcy for Fay Servicing
LLC. In this position, I have access to the business records of
Fay Servicing LLC and my responsibilities include ascertaining
and verifying amounts due and payable as to delinquent bankruptcy
accounts.

    3.    The facts stated in this affidavit are based upon
information that I obtained by reviewing records maintained in
the ordinary course of Fay Servicing LLC's business, as part of
regularly conducted business activity, by or from information
transmitted by person(s) with knowledge of the events described
therein, at or near the time of the event described.

    4.    Jeffrey D. DeHaan and Sarah K. DeHaan executed a note,
dated August 10, 2006, in favor of Oak Street Mortgage LLC in the
original principal sum of $255,000.00 (the note).

    5.    Fay Servicing LLC is the servicer of the loan and is
authorized to act on behalf of the holder of the note.

    6.    The note is secured by a mortgage encumbering certain
real property commonly known as 400 Sanford Road, Benson, MN,
56215 and legally described as follows:

LOT ONE (1), BLOCK TWO (2), HAWLEYWOOD SECOND ADDITION, SWIFT COUNTY, MINNESOTA.

7.   The unpaid payoff balance of this loan as of February 26, 2018 together with accrued interest is the amount of $340,573.57.

8.   Interest continues to accrue from the date set forth in paragraph 7, above, at the rate of 5.375% per year.  This rate is subject to change pursuant to the rates in the mortgage.

9.   The debtor(s) scheduled the value of the property as $204,200.00. The estimated market value is $237,000.00.  An online printout of the county tax page for the property is attached to this affidavit as "Exhibit A".

10.   Attached as "Exhibit B" is a true and correct copy of the loan history beginning on the date of default applicable to this motion provided on Local Form 4001-1.

11.   The note, mortgage, amendments, modifications, and assignments, if any, are attached hereto as "Exhibit C" and are true and accurate copies of the originals.

I declare under penalty of perjury that, to the best of my knowledge, and after reasonable inquiry, the foregoing is true and correct.

BY:   _____

Name:  JAMES M. STEFANI

Title:  AVP of Bankruptcy

Date:  3/29/18

Subscribed and sworn to before me this __29__ day of March , 20_18_, by
_James Stefani_

_____ , Notary Public

State of _Florida_____
My Commission expires:

Personally Known _✓___ OR
Produced Identification _____.

Type of Identification Produced:
_____.

Notary Public State of Florida
Rocio Medina
My Commission GG 009699
Expires 07/19/2020

RONALD A. VADNAIS
SWIFT COUNTY TREASURER
P.O. BOX 207
BENSON, MN 56215
320-843-3544
www.swiftcounty.com

**2017**
PROPERTY TAX STATEMENT

BENSON CITY

| PRCL# | ██████ | RCPT# | ██████ |
|---|---|---|---|
| TC | | 2.275 | 2.211 |

Property ID Number: ██████
Property Description: HAWLEYWOOD SECOND ADDITION
LOT 1 BLOCK 2

400 SANFORD ROAD

JEFFREY D & SARAH K DEHAAN        11191-T
400 SANFORD ROAD
BENSON        MN 56215

| | Values and Classification | | |
|---|---|---|---|
| | Taxes Payable Year | 2016 | 2017 |
| Step 1 | Estimated Market Value: | 242,900 | 237,000 |
| | Homestead Exclusion: | 15,379 | 15,910 |
| | Taxable Market Value: | 227,521 | 221,090 |
| | New Improve/Expired Excls: | | |
| | Property Class: | RES HSTD | RES HSTD |
| | Sent in March 2016 | | |
| Step 2 | **Proposed Tax** | | |
| | * Does Not Include Special Assessments | | 3,530.00 |
| | Sent in November 2016 | | |
| Step 3 | **Property Tax Statement** | | |
| | First half Taxes: | | 1,794.00 |
| | Second half Taxes: | | 1,794.00 |
| | Total Taxes Due in 2017 | | 3,588.00 |

$$$
REFUNDS?

You may be eligible for one or even two refunds to reduce your property tax.
Read the back of this statement to find out how to apply.

| | Taxes Payable Year: | 2016 | 2017 |
|---|---|---|---|
| 1. | Use this amount on Form M1PR to see if you are eligible for a homestead credit refund | | 3,538.00 |
| | File by August 15th. IF BOX IS CHECKED, YOU OWE DELINQUENT TAXES AND ARE NOT ELIGIBLE ☐ | | |
| 2. | Use these amounts on Form M1PR to see if you are eligible for a special refund | 3,244.00 | |
| **Property Tax and Credits** | 3. Property taxes before credits | 3,244.00 | 3,538.00 |
| | 4. A. Agricultural market value credits to reduce your property tax | .00 | .00 |
| | B. Other credits to reduce your property tax | .00 | .00 |
| | 5. Property taxes after credits | 3,244.00 | 3,538.00 |
| **Property Tax by Jurisdiction** | 6. County | 837.55 | 904.56 |
| | 7. City or Town | 1,647.74 | 1,825.07 |
| | 8. State General Tax | .00 | .00 |
| | 9. School District: 777  A. Voter approved levies | 302.85 | 317.32 |
| | B. Other local levies | 330.12 | 363.54 |
| | 10. Special Taxing Districts:  A. REGION 6W | 6.05 | 6.77 |
| | B. RURAL DEV AUTH | 20.34 | 14.26 |
| | C. | | |
| | D. | | |
| | 11. Non-school voter approved referenda levies | 99.35 | 106.48 |
| | 12. Total property tax before special assessments | 3,244.00 | 3,538.00 |
| **Special Assessments on Your Property** | 13. A. 62017  SOLID WASTE | | 50.00 |
| | B. | | |
| PRIN 50.00 | C. | | |
| INT | D. | | |
| TOT 50.00 | E. | | |
| | 14. YOUR TOTAL PROPERTY TAX AND SPECIAL ASSESSMENTS | 3,294.00 | 3,588.00 |

---

**2nd Half Pay Stub 2017**   DETACH AND RETURN THIS STUB WITH YOUR SECOND HALF PAYMENT
MAKE CHECKS PAYABLE TO: SWIFT COUNTY TREASURER
IF YOU PAY YOUR TAXES LATE, YOU WILL BE CHARGED A PENALTY. SEE BACK FOR RATE

PRCL# ██████        RCPT# ██████
RES HSTD

| AMOUNT DUE | | |
|---|---|---|
| OCTOBER 16, 2017 | 2ND HALF TAX | 1,794.00 |
| | PENALTY | |
| NO RECEIPT SENT UNLESS REQUESTED. YOUR CANCELLED CHECK IS YOUR RECEIPT | TOTAL | |

JEFFREY D & SARAH K DEHAAN        11191-T
400 SANFORD ROAD
BENSON        MN 56215

Ronald A. Vadnais
Swift County Treasurer
☐ CASH  ☐ CHECK  ☐ COUNTER  ☐ MAIL  ☐ OTHER
List address corrections and changes on the back.

---

**1st Half Pay Stub 2017**   DETACH AND RETURN THIS STUB WITH YOUR FIRST HALF PAYMENT
MAKE CHECKS PAYABLE TO: SWIFT COUNTY TREASURER
IF YOU PAY YOUR TAXES LATE, YOU WILL BE CHARGED A PENALTY. SEE BACK FOR RATE

PRCL# ██████        RCPT# ██████
RES HSTD

| AMOUNT DUE | | | TOTAL TAX | 3,588.00 |
|---|---|---|---|---|
| MAY 15, 2017 | | | 1ST HALF TAX | 1,794.00 |
| | | | PENALTY | |
| NO RECEIPT SENT UNLESS REQUESTED. YOUR CANCELLED CHECK IS YOUR RECEIPT | | | TOTAL | |

JEFFREY D & SARAH K DEHAAN        11191-T
400 SANFORD ROAD
BENSON        MN 56215

**EXHIBIT A**

Ronald A. Vadnais
Swift County Treasurer
☐ CASH  ☐ CHECK  ☐ COUNTER  ☐ MAIL  ☐ OTHER
List address corrections and changes on the back.

# $$$ REFUNDS

You <u>may</u> qualify for one or both refunds from the State of Minnesota based on your 2017 Property Taxes.

If you owned and occupied this property as your homestead on January 2, 2017, you *may* qualify for one or both of the following refunds:

1. *The Property Tax Refund* - If your taxes exceed certain income-based thresholds, <u>and</u> your total household income is less than $108,660.
2. *The Special Homestead Credit Refund* - If you also owned and occupied this property as your homestead on January 2, 2016 and:
   - The net property tax on your homestead increased by more than 12 percent from 2016 to 2017, and
   - The increase was at least $100, not due to improvements on the property.

For Form M1PR and instructions:

 

www.revenue.state.mn.us    (651) 296-3781    Minnesota Tax Forms
Mail Station 1421
St. Paul, MN 55146-1421

*Make sure to provide your Property ID Number on your M1PR to ensure prompt processing.*

## Senior Citizen Property Tax Deferral

The Senior Citizen Deferral Program provides a low-interest loan to senior citizens having difficulty paying property taxes. This is not a tax forgiveness program, however, this program:
- Limits the maximum amount of property tax paid to 3% of total household income, and
- Ensures the amount of tax paid remains the same as long as you participate in this program.

To be eligible, you must file an application by July 1, 2017, as well as:
1. Be at least 65 years old,
2. Have a household income of $60,000 or less, and
3. Have lived in your home for at least 15 years.

To receive a fact sheet and application for this program, go to www.revenue.state.mn.us and type keyword "deferral" into the search box, or call the Minnesota Department of Revenue at (651) 556-4803.

## Penalty For Late Payment Of Property Tax

If you pay your first half or second half property tax after the due dates, a penalty will be added to your tax. The later you pay, the greater the penalty you must pay. The table below shows the penalty amounts added to your tax if your property taxes are not paid before the date shown.

| Property Type: | May 16 | June 1 | July 1 | Aug 1 | Sep 1 | Oct 1 | Oct 17 | Nov 1 | Nov 16 | Dec 1 | Jan 2 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **Homesteads and Cabins** 1st half | 2% | 4% | 5% | 6% | 7% | 8% | 8% | 8% | - | 8% | 10% |
| 2nd half | - | - | - | - | - | - | 2% | 6% | - | 8% | 10% |
| Both Unpaid | - | - | - | - | - | - | 5% | 7% | - | 8% | 10% |
| **Agricultural Homesteads** 1st half | 2% | 4% | 5% | 6% | 7% | 8% | 8% | 8% | - | 8% | 10% |
| 2nd half | - | - | - | - | - | - | - | - | 6% | 8% | 10% |
| Both Unpaid | - | - | - | - | - | - | - | - | 7% | 8% | 10% |
| **Nonhomesteads** 1st half | 4% | 8% | 9% | 10% | 11% | 12% | 12% | 12% | - | 12% | 14% |
| 2nd half | - | - | - | - | - | - | 4% | 8% | - | 12% | 14% |
| Both Unpaid | - | - | - | - | - | - | 8% | 10% | - | 12% | 14% |
| **Agricultural Nonhomesteads** 1st half | 4% | 8% | 9% | 10% | 11% | 12% | 12% | 12% | - | 12% | 14% |
| 2nd half | - | - | - | - | - | - | - | - | 8% | 12% | 14% |
| Both Unpaid | - | - | - | - | - | - | - | - | 10% | 12% | 14% |
| **Personal Property** | 8% | 8% | 8% | 8% | 8% | 8% | 8% | 8% | - | 8% | 8% |
| **Manufactured Homes** 1st half | - | - | - | 8% | 8% | 8% | 8% | 8% | - | 8% | 8% |
| 2nd half | - | - | - | - | - | - | - | 8% | 8% | 8% | 8% |

**Personal Property Located on Leased Government-owned Land:** Taxes may be paid in two installments due at the same time as real property taxes. These taxes are subject to the same penalty schedule and penalty rates as real property taxes. All other personal property taxes are due in full on or before May 15, 2017.

**Note to manufactured home owners:** The title to your manufactured home cannot be transferred unless all current and delinquent personal property taxes due at the time of the transfer are paid.

**IMPORTANT ADDITIONAL NOTES:**
- TAXPAYERS ARE RESPONSIBLE FOR PAYMENT OF TAX AND THIS IS NOT AFFECTED BY FAILURE TO PROVIDE A STATEMENT FOR A PARCEL.
- WE DO NOT MAIL SECOND HALF STATEMENTS.
- PAYMENT - WE ARE PROHIBITED FROM ACCEPTING POST-DATED CHECKS. PAYMENT MUST BE IN U.S. DOLLARS BY MONEY ORDER, OR DRAFT FROM A U.S. BANK OR BRANCH. DRAFT MUST HAVE BANK'S CODED TRANSIT NUMBER ALONG BOTTOM EDGE.
- POSTMARK DETERMINES MAIL PAYMENT DATE. Laws 1996, Chapter 471, Article3, Section 22, enacted as M.S. 276.017 PROVIDE THAT A UNITED STATES POSTAL SERVICE POSTMARK QUALIFIES AS PROOF OF TIMELY MAILING; HOWEVER POSTMARK OF A PRIVATE POSTAGE METER MACHINE DOES NOT QUALIFY AS PROOF OF TIMELY MAILING.

---

**ADDRESS CORRECTION**

NEW ADDRESS:

NAME _____

STREET
ADDRESS _____

CITY _____

STATE _____ ZIP CODE _____

*THIS STUB MUST ACCOMPANY FIRST HALF PAYMENT*

**ADDRESS CORRECTION**

NEW ADDRESS:

NAME _____

STREET
ADDRESS _____

CITY _____

STATE _____ ZIP CODE _____

*THIS STUB MUST ACCOMPANY SECOND HALF PAYMENT*

# DeHaan

**Loan History.** Begin loan history from the date of the first default related to the current default amount that is claimed in the motion.

| Date | Amount Rec'd From Debtor(s) | CHARGES | | | | |
|---|---|---|---|---|---|---|
| | | Monthly Amount Due Principal/Interest | Monthly Amount Due Escrow | Amount Due Late Fees | Amount Due Other Charges* | Description of other Charges |
| 11/1/2014 | | $1,520.11 | $651.20 | | | |
| 11/17/2014 | $1,955.73 | | | | | applied to suspense |
| 12/1/2014 | | $1,520.11 | $651.20 | | | |
| 1/1/2015 | | $1,520.11 | $651.20 | | | |
| 1/2/2015 | $1,955.73 | | | | | applied to 11/1/2014 |
| 2/1/2015 | | $1,520.11 | $651.20 | | | |
| 3/1/2015 | | $1,520.11 | $651.20 | | | |
| 3/6/2015 | $1,955.73 | | | | | applied to 12/1/2014 |
| 4/1/2015 | | $1,520.11 | $651.20 | | | |
| 5/1/2015 | | $1,520.11 | $651.20 | | | |
| 5/5/2015 | $1,955.73 | | | | | applied to 1/1/2015 |
| 6/1/2015 | | $1,520.11 | $651.20 | | | |
| 7/1/2015 | | $1,520.11 | $651.20 | | | |
| 7/10/2015 | $324.36 | | | | | applied to suspense |
| 8/1/2015 | | $1,520.11 | $651.20 | | | |
| 9/1/2015 | | $1,520.11 | $651.20 | | | |
| 10/1/2015 | | $1,520.11 | $651.20 | | | |
| 11/1/2015 | | $1,520.11 | $651.20 | | | |
| 12/1/2015 | | $1,520.11 | $651.20 | | | |
| 12/15/2015 | $2,193.41 | | | | | applied to 2/1/2015 |
| 1/1/2016 | | $1,520.11 | $480.98 | | | |
| 2/1/2016 | | $1,520.11 | $480.98 | | | |
| 3/1/2016 | | $1,520.11 | $480.98 | | | |
| 4/1/2016 | | $1,520.11 | $480.98 | | | |
| 5/1/2016 | | $1,520.11 | $480.98 | | | |
| 6/1/2016 | | $1,520.11 | $480.98 | | | |
| 7/1/2016 | | $1,520.11 | $480.98 | | | |
| 8/1/2016 | | $1,520.11 | $480.98 | | | |
| 9/1/2016 | | $1,520.11 | $480.98 | | | |
| 10/1/2016 | | $1,520.11 | $480.98 | | | |
| 11/1/2016 | | $1,520.11 | $480.98 | | | |

EXHIBIT B

| | (a) | (b) | (c) | (d) | (e) |
|---|---|---|---|---|---|
| 12/1/2016 | | $1,520.11 | $480.98 | | | |
| 1/1/2017 | | $1,520.11 | $480.98 | | | |
| 2/1/2017 | | $1,520.11 | $579.17 | | | |
| 3/1/2017 | | $1,520.11 | $579.17 | | | |
| 4/1/2017 | | $1,520.11 | $579.17 | | | |
| 5/1/2017 | | $1,520.11 | $579.17 | | | |
| 6/1/2017 | | $1,520.11 | $579.17 | | | |
| 7/1/2017 | | $1,520.11 | $579.17 | | | |
| 8/1/2017 | | $1,520.11 | $579.17 | | | |
| 9/1/2017 | | $1,520.11 | $579.17 | | | |
| 10/1/2017 | | $1,643.03 | $579.17 | | | |
| 11/1/2017 | | $1,643.03 | $579.17 | | | |
| 12/1/2017 | | $1,643.03 | $579.17 | | | |
| 1/1/2018 | | $1,643.03 | $579.17 | | | |
| 2/1/2018 | | $1,643.03 | $579.17 | | | |
| TOTALS | $10,340.69 | $61,419.00 | $22,898.75 | $0.00 | $0.00 | |
| | (a) | (b) | (c) | (d) | (e) | |

* Any "Other Charge" must be described, itemized by amount and allowed under note and/or mortgage (e.g., inspection fee, appraisal fee, insurance, taxes, etc.)

**Note: Column (b) + (c) + (d) + (e) - (a) must equal the current default amount that is claimed in the motion.**

Attorneys fees and filing fee for the motion, if allowed under
note and/or mortgage and sought by Movant to resolve motion        $1,031.00

Current Default Amount Claimed in the Motion        $73,977.06

Escrow Balance (amounts held for payment of taxes, insurance, etc.)        _____

Suspense Account Balance (amount of unapplied payments)        $1,655.45

# ADJUSTABLE RATE NOTE

### (LIBOR Six-Month Index (As Published In *The Wall Street Journal*)—Rate Caps)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

August 10, 2006          BENSON          Minnesota
|Date|                    [City]          [State]
                       400 SANFORD ROAD
                       BENSON , MN  56215

[Property Address]

### 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S $ **255,000.00**                    (this amount is called "Principal"), plus interest, to the order of Lender. Lender is **Oak Street Mortgage LLC**

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2.  INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of      **7.2500%**. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

### 3.  PAYMENTS

#### (A)  Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the first day of each month beginning on **October 01, 2006** I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **September 01, 2036**        , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **Oak Street Mortgage LLC, 11595 N MERIDIAN ST, SUITE 400, CARMEL, IN 46032**

or at a different place if required by the Note Holder

#### (B)  Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U S $ **1,739.55**                    . This amount may change.

#### (C)  Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

EXHIBIT C

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The interest rate I will pay may change on the first day of **September 2009** , and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

### (B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding **Five**

percentage points ( **5.0000%**) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

### (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than **10.2500%** or less than **7.2500%** Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **One**

percentage points ( **1.0000%**) from the rate of interest I have been paying for the preceding **6** months. My interest rate will never be greater than **14.2500%**

### (E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

### (F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY     *See attached Addendum to Note

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit, and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of **Ten** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.0000%** of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Borrower has executed and acknowledges receipt of pages 1 through 4 of this Note.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

| | | | |
|---|---|---|---|
| | (Seal) | | (Seal) |
| SARAH K. DEHAAN | -Borrower | JEFFREY D. DEHAAN | -Borrower |

_Sarah K. DeHaan_ (Seal) -Borrower     _Jeffrey D. Dehaan_ (Seal) Borrower

(Seal) -Borrower     (Seal) -Borrower

** See ADDENDUM TO NOTE for Modifications and Additional Disclosures _JDD_ [Sign Original Only]
(Inits.)

Space Below Line For Lender Use Only

Without Recourse Pay To The Order Of

Oak Street Mortgage LLC

Authorized Signer for Oak Street Mortgage LLC

Crystal F. Johnson, Funding Associate

*(Page 4 of 4 pages)*

## ADDENDUM TO NOTE

This ADDENDUM TO NOTE is made on **August 10, 2006**, and is incorporated into and amends, modifies and supplements the Note of the same date given by the undersigned (the "Borrower") in the original principal amount of $ **255,000.00** to **Oak Street Mortgage LLC**

(the "Lender") and any riders or modifications thereto ("Note").

In addition to the agreements made in the Note, Borrower and Lender further agree as follows:

1. If the Note is secured by a first mortgage, Paragraph 4 (if the Note is fixed rate or balloon) or Paragraph 5 (if the Note is adjustable rate) entitled "**BORROWER'S RIGHT TO PREPAY**" is deleted in its entirety and replaced with the following:

**"BORROWER'S RIGHT TO PREPAY; PREPAYMENT CHARGE**

I have the right to make prepayments of principal at any time before they are due, but the Note Holder may apply any tendered payments first to any amounts then due and owing under this Note or under the Security Instrument and then to principal not yet due. A payment of principal only is known as a "prepayment." A prepayment of the entire unpaid principal is known as a "full prepayment." A prepayment of only part of the unpaid principal is known as a "partial prepayment."

If I make a partial prepayment and this Note is a fixed rate Note, there will be no changes in the due dates or amounts of my subsequent scheduled monthly payments unless the Note Holder agrees in writing to those changes. If I make a partial prepayment and this Note is an adjustable rate Note, there will be no changes in the due dates or amounts of my subsequent scheduled monthly payments until the first payment due after the first Change Date following my partial prepayment unless the Note Holder agrees in writing to those changes. If I make a full prepayment during the first **36** months commencing from the date of this Note, then as consideration for the acceptance of such prepayment, and in addition to any other sum payable hereunder, I agree to pay the Note Holder a prepayment charge equal to the lesser of two percent (2%) of the unpaid principal balance or 60 days interest on the unpaid principal balance at the note rate. No prepayment charge will be assessed for any prepayment of the loan upon the sale of the secured property.

2. If the Note is secured by a second mortgage, Paragraph 6 entitled "**BORROWER'S PAYMENTS BEFORE THEY ARE DUE**" is deleted in its entirety and replaced with the following:

**"BORROWER'S PAYMENTS BEFORE THEY ARE DUE**

I have the right to make prepayments of principal at any time before they are due, but the Note Holder may apply any tendered payments first to any amounts then due and owing under this Note or under the Security Instrument and then to principal not yet due. A payment of principal only is known as a "prepayment." A prepayment of the entire unpaid principal is known as a "full prepayment." A prepayment of only part of the unpaid principal is known as a "partial prepayment."

If I make a partial prepayment and this Note is a fixed rate Note, there will be no changes in the due dates or amounts of my subsequent scheduled monthly payments unless the Note Holder agrees in writing to those changes. If I make a partial prepayment and this Note is an adjustable rate Note, there will be no changes in the due dates or amounts of my subsequent scheduled monthly payments until the first payment due after the first Change Date following my partial prepayment unless the Note Holder agrees in writing to those changes. If I make a full prepayment during the first **36** months commencing from the date of this Note, then as consideration for the acceptance of such prepayment, and in addition to any other sum payable hereunder, I agree to pay the Note Holder a prepayment charge equal to the lesser of two percent (2%) of the unpaid principal balance or 60 days interest on the unpaid principal balance at the note rate. No prepayment charge will be assessed for any prepayment of the loan upon the sale of the secured property.

3. If the Note is secured by a first mortgage and is subject to the Home Ownership and Equity Protection Act of 1994, Paragraph 4 (if the Note is fixed rate or balloon) or Paragraph 5 (if the Note is adjustable rate) entitled "**BORROWER'S RIGHT TO PREPAY**" remains unchanged.

4. If the Note is secured by a second mortgage and is subject to the Home Ownership and Equity Protection Act of 1994 Paragraph 6 entitled "**BORROWER'S PAYMENTS BEFORE THEY ARE DUE**" remains unchanged.

5.   If the Note is an Adjustable Rate Note, the section of the Note entitled **"INTEREST RATE AND MONTHLY PAYMENT CHANGES"**, (D) **"Limits on Interest Rate Changes"** is amended by adding the following language "My Interest rate will never be less than the floor rate as it is disclosed in the "Adjustable Rate Mortgage Loan Program Notice" provided to me at closing "

_Sarah K. CeHaan_____ (Seal)
**SARAH K. DEHAAN**

_Jeffrey D. DeHaan_____ (Seal)
**JEFFREY D. DEHAAN**

_____ (Seal)

_____ (Seal)

_____ (Seal)

_____ (Seal)

## Addendum to Note

### Returned Check Charges

For a valuable consideration, receipt of which is hereby acknowledged, the undersigned agree that a certain Promissory Note of even date to which this Addendum is attached, shall be subject to the following provisions. not withstanding any provisions to the contrary contained in said Promissory Note, Truth-In-Lending Disclosure, or the Deed of Trust, Mortgage, Real Estate Mortgage, Security Deed (Security Instrument) securing the same.

This Addendum is attached to and made a part of that certain Promissory Note given by
**SARAH K. DEHAAN, JEFFREY D. DEHAAN**

(Borrower) to

**Oak Street Mortgage LLC** (Lender), dated
**08/10/2006**      which Note is in the principal amount of $ **255,000.00**      .

I will pay to the note holder the sum of Thirty and no/100 Dollars ($30.00) for any check which has been returned unpaid.

_____
Witness

_Sarah K. DeHaan_      08/10/06
**SARAH K. DEHAAN**      Date

_Jeffrey D. DeHaan_      8/10/06
**JEFFREY D. DEHAAN**      Date

_____
Date

_____
Date

_____
Date

_____
Date

Date _8-23-06_ Treasurer's Receipt No. ██████

*Ronald A. Vadnais*
         County Treasurer
Countersigned
*Byron L. Giese*
         County Auditor

*NS*

Doc. No. 6107

Office of Registrar of Titles
COUNTY OF SWIFT, MINN.

I hereby certify that the within instrument
was filed in this office on the _23rd_
day of _August_ _____ A.D.
_2006_, at _2_ o'clock _P_ M.,
Book _7_ of _Titles_
on page _230_
*Donna Tilberg*, Registrar of Titles
By *Mary Amundson* Deputy

Recording Requested by &
When Recorded Return To:
US Recordings, Inc.
2925 Country Drive Ste 201
St. Paul, MN 55117

[Space Above This Line For Recording Data]

# MORTGAGE

MIN: ██████████████

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "**Security Instrument**" means this document, which is dated **August 10, 2006**                  , together with all Riders to this document.

(B) "**Borrower**" is **JEFFREY D. DEHAAN AND SARAH K. DEHAAN, HUSBAND AND WIFE, AS JOINT TENANTS**

Borrower is the mortgagor under this Security Instrument.

(C) "**MERS**" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. ████████

(D) "**Lender**" is **Oak Street Mortgage LLC**
Lender is a **LIMITED LIABILITY COMPANY**                                        organized and existing under
the laws of **DELAWARE**                                                              . Lender's address is
**11595 N MERIDIAN ST, SUITE 400, CARMEL, IN  46032**

(E) "**Note**" means the promissory note signed by Borrower and dated **August 10, 2006**                  . The Note states that Borrower owes Lender **Two Hundred Fifty Five Thousand and no/100**
                                        Dollars (U.S. $ **255,000.00**          ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **September 01, 2036**.

(F) "**Property**" means the property that is described below under the heading "Transfer of Rights in the Property."

(G) "**Loan**" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

# SCANNED

(H) **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
|---|---|---|
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] Other(s) [specify] |
| [ ] 1-4 Family Rider | [ ] Biweekly Payment Rider | |

(I) **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J) **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K) **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) **"Escrow Items"** means those items that are described in Section 3.

(M) **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N) **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the **County** of **SWIFT** :
[Type of Recording Jurisdiction] [Name of Recording Jurisdiction]

**SEE LEGAL DESCRIPTION ATTACHED**

which currently has the address of **400 SANFORD ROAD**
[Street]

**BENSON** , Minnesota **56215** ("Property Address"):
[City] [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or

partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.  **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.  **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly.

Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) **Any such agreements will not affect the rights Borrower has—if any—with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan

charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument at the time such documents are executed or within a reasonable time thereafter.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or

cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower by certified mail to the address of the Property or another address designated by Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after

acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees.

If Lender invokes the power of sale, Lender shall cause a copy of a notice of sale to be served upon any person in possession of the Property. Lender shall publish a notice of sale, and the Property shall be sold at public auction in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23.  **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24.  **Waiver of Homestead.** Borrower waives all right of homestead exemption in the Property.

25.  **Interest on Advances.** The interest rate on advances made by Lender under this Security Instrument shall not exceed the maximum rate allowed by Applicable Law.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 12 of this Security Instrument and in any Rider executed by Borrower and recorded with it.

_Sarah K. DeHaan_ _____ (Seal)      _Jeffrey D. DeHaan_ _____ (Seal)
SARAH K. DEHAAN            -Borrower      JEFFREY D. DEHAAN            -Borrower


_____ (Seal)      _____ (Seal)
                          -Borrower                                -Borrower


_____ (Seal)      _____ (Seal)
                          -Borrower                                -Borrower


Witness:                              Witness:

_____              _____

State of Minnesota, SWIFT County ss:

The instrument was acknowledged before me on **August 10, 2006**
by SARAH K. DEHAAN, JEFFREY D. DEHAAN HUSBAND AND WIFE

DION JOHN SMOLIK
Notary Public
Minnesota
My Comm. Expires Jan 31, 2008

Dion John Smolik     Notary Public

My commission expires: 1/31/08

This instrument was drafted by

Name: **Michelle Doll**

Address: **Oak Street Mortgage LLC**
           **11595 N MERIDIAN STREET, SUITE 400**
           **CARMEL, IN  46032**

After Recording Return To:
Oak Street Mortgage
11595 N MERIDIAN STREET, SUITE 400
CARMEL, IN 46032

# ADJUSTABLE RATE RIDER
### (LIBOR Six-Month Index (As Published In *The Wall Street Journal*)—Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this **10th** day of **August 2006**, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to **Oak Street Mortgage LLC**

("Lender") of the same date and covering the property described in the Security Instrument and located at:

**400 SANFORD ROAD**
**BENSON , MN 56215**

[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

## A. INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial interest rate of **7.2500 %**. The Note provides for changes in the interest rate and the monthly payments, as follows:

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES
### (A) Change Dates
The interest rate I will pay may change on the first day of **September 2009**, and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

### (B) The Index
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Calculation of Changes
Before each Change Date, the Note Holder will calculate my new interest rate by adding **Five**

percentage points ( **5.0000 %**) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **10.2500**% or less than **7.2500**%. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **One** percentage points ( **1.0000**%) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than **14.2500**%.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me to and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 3 of this Adjustable Rate Rider.

_____ (Seal)      _____ (Seal)
**SARAH K. DEHAAN**        -Borrower     **JEFFREY D. DEHAAN**       -Borrower


_____ (Seal)      _____ (Seal)
                           -Borrower                                -Borrower


_____ (Seal)      _____ (Seal)
                           -Borrower                                -Borrower

*(Page 3 of 3 pages)*

LEGAL DESCRIPTION for ████████

Benson

Lot One (1), Block Two (2), Hawleywood Second Addition, Swift County, Minnesota.

Torrens Certificate Number 1946

Send Tax Statements To:
Jeffrey D. DeHaan and Sarah K. DeHaan
400 Sanford Road
Benson, Minnesota 56215



TITLE COPY

Doc. No. 6560

Office of Registrar of Titles
COUNTY OF SWIFT, MINN.

I hereby certify that the within instrument
was filed in this office on the ___8th___
day of ___January___ A.D.
___2009___ , at ___9:30___ o'clock _A_ M..
Book ____7____ of ___Titles___
on page _230_
_____ Registrar of Titles
By _____ Deputy

## ASSIGNMENT OF MORTGAGE

FOR VALUABLE CONSIDERATION, Mortgage Electronic Registration Systems, Inc.,

a Delaware corporation as nominee for Oak Street Mortgage, LLC, a Delaware limited

liability company, Assignor, hereby sells, assigns and transfers to HSBC Mortgage

Services, Inc., Assignee, the Assignor's interest in the Mortgage dated August 10, 2006,

executed by Jeffrey D. Dehaan and Sarah K. Dehaan, husband and wife, as mortgagor(s)

to Mortgage Electronic Registration Systems, Inc., a Delaware corporation as nominee

for Oak Street Mortgage, LLC, a Delaware limited liability company, mortgagee, and

filed for record in the Office of the County Registrar of Titles, in and for the County of

Swift, Minnesota, on August 23, 2006, as Document No. 6107, and memorialized upon

Certificate of Title No. 1946; together with all rights and interests in the note and

obligations therein specified and the debt thereby secured. Assignor covenants with

Assignee, its successors and assigns, that Assignor has good right to sell, assign and

transfer the same.


Assignee Address: 636 Grand Regency Blvd, Brandon, FL 33510

**IN TESTIMONY WHEREOF,** the said corporation has caused there presents to be

executed by <u>Thomas J. Reiter</u> its <u>Certifying Officer</u> this _1st_ day of

<u>December</u> , 20 _08_.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

Assignor

By: _____

Its: ___CERTIFYING OFFICER___

STATE OF MINNESOTA     )
                           ) ss.

COUNTY OF RAMSEY     )

    The foregoing instrument was acknowledged before me, a Notary Public, this

_1st_ day of <u>December</u> , 20 _08_, by <u>Thomas J. Reiter</u> its

<u>Certifying Officer</u> of Mortgage Electronic Registration Systems, Inc., a Delaware

corporation, on behalf of the corporation.



_____
Notary Public

THIS INSTRUMENT WAS DRAFTED BY:

REITER & SCHILLER, P.A.
Attorneys at Law
The Academy Professional Building
25 North Dale Street, Second Floor
St. Paul, MN 55102-2227
Attorney Reg. No. 152262
(651) 209-9760

JOSHUA MATTHEW FEIT
NOTARY PUBLIC - MINNESOTA
MY COMMISSION
EXPIRES JAN. 31, 2010

TITLE COPY

Office of Registrar of Titles
COUNTY OF SWIFT, MINN.

Hereby certify that the within instrument
was filed in this office on the ___24th___
day of ___July___ A.D.
___2012___ at ___2___ o'clock ___P___ M.
Book ___7___ of ___Titles___
on page ___230___

_Troy Amundson_ Registrar of Titles
By _____ Deputy

COPY

---

### CORPORATE ASSIGNMENT OF MORTGAGE

Swift, Minnesota
SELLER'S SERVICING #: ▓▓▓▓ DEHAAN*

MERS #: ▓▓▓▓▓▓▓▓▓▓▓▓▓

Date of Assignment: July 20th, 2012
Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR OAK STREET
MORTGAGE LLC, ITS SUCCESSORS AND ASSIGNS at 1595 SPRING HILL ROAD, STE 310, VIENNA, VA 22182
Assignee: HSBC MORTGAGE SERVICES INC at 636 GRAND REGENCY BLVD, BRANDON, FL 33510

Executed By: JEFFREY D. DEHAAN AND SARAH K. DEHAAN , HUSBAND AND WIFE , AS JOINT TENANTS To:
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC AS NOMINEE FOR OAK STREET MORTGAGE LLC
"ITS SUCCESSORS AND ASSIGNS"
Date of Mortgage: 08/10/2006 Recorded: 08/23/2006 in Book/Reel/Liber: 7 Page/Folio: 230 as Instrument No.:
6107 In the County of Swift, State of Minnesota.

Property Address: 400 SANFORD ROAD, BENSON, MN 56215

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of
which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said
Mortgage having an original principal sum of $255,000.00 with interest, secured thereby, with all moneys now owing
or that may hereafter become due or owing in respect thereof, and the full benefit of all the powers and of all the
covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee,
the Assignor's beneficial interest under the Mortgage.

TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever, subject to the
terms contained in said Mortgage.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR OAK STREET MORTGAGE LLC,
ITS SUCCESSORS AND ASSIGNS
On July 20th, 2012

By: _MM Lytle_
MICHELLE LYTLE, Assistant Secretary

STATE OF Florida
COUNTY OF Hillsborough

On July 20th, 2012, before me, TREVIN MYERS, a Notary Public in and for Hillsborough in the State of Florida,
personally appeared MICHELLE LYTLE, Assistant Secretary of MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC. AS NOMINEE FOR OAK STREET MORTGAGE LLC, ITS SUCCESSORS AND ASSIGNS, 1595
SPRING HILL ROAD, STE 310, VIENNA, VA 22182, personally known to me (or proved to me on the basis of
satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by
his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted,
executed the instrument.

WITNESS my hand and official seal,

TREVIN MYERS
Notary Expires: 05/30/2015 #EE098231

TREVIN MYERS
NOTARY
My Comm. Expires
May 30, 2015
No. EE098231
PUBLIC
STATE OF FLORIDA

(This area for notarial seal)

Prepared By: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

Angela Johnson, HSBC MORTGAGE SERVICES 636 GRAND REGENCY BLVD, BRANDON, FL 33510 813-571-8400
When Recorded Return To: ASSIGNMENTS HSBC MORTGAGE SERVICES P.O. BOX 1422, BRANDON, FL
33509

**Office of Registrar of Titles in Swift County, MN**
I hereby certify that the within instrument was filed in
this office on April 9, 2018 at 8:15 AM Rec Fee $46.00
Pages: 1 Doc #7854 Bk 7 of Titles Pg 230
Mary Amundson, Registrar of Titles     Cert. No. 1946
By _____     Deputy

## CORPORATE ASSIGNMENT OF MORTGAGE

**Swift, Minnesota**
**SELLER'S SERVICING #:** ▮▮▮▮ "DEHAAN"

Date of Assignment: April 6th, 2018
Assignor: HSBC MORTGAGE SERVICES, INC. by Fay Servicing , LLC Its Attorney-in-Fact at 636 Grand Regency
Blvd, Brandon, FL 33510
Assignee: Citibank, N.A., not in its individual capacity, but solely as trustee of NRZ Pass-Through Trust VI at 388
Greenwich St., 14th Fl., New York, NY 10013

Executed By: JEFFREY D. DEHAAN and SARAH K. DEHAAN, HUSBAND AND WIFE, AS JOINT TENANTS  To:
Mortgage Electronic Registration Systems, Inc. as nominee for Oak Street Mortgage LLC Its Successors and Assigns
Dated: 08-10-2006 Recorded: 08-23-2006 as Instrument No. 6107, Book/Reel/Liber 7, Page/Folio 230  In the County
of Swift, State of Minnesota.

Original CT#: 1946 New CT#: 1946

Property Address: 400 SANFORD ROAD, BENSON, MN 56215

    KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of
which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Mortgage
having an original principal sum of $255,000.00 with interest, secured thereby, and the full benefit of all the powers
and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the
said Assignee, the Assignor's interest under the Mortgage.

    TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever, subject to the
terms contained in said Mortgage.

HSBC MORTGAGE SERVICES, INC. by Fay Servicing , LLC Its Attorney-in-Fact POA: 4/5/2018 in Instrument No.:
7852
On April 6th, 2018

By: _____
Jennifer Grenier, Vice President

STATE OF Florida
COUNTY OF HILLSBOROUGH

On April 6th, 2018, before me, April Kennedy, a Notary Public in and for HILLSBOROUGH in the State of Florida,
personally appeared Jennifer Grenier, Vice President of HSBC MORTGAGE SERVICES, INC. by Fay Servicing , LLC
Its Attorney-in-Fact, 636 Grand Regency Blvd, Brandon, FL  33510, personally known to me (or proved to me on the
basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their
signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the
instrument.

WITNESS my hand and official seal,

_____
April Kennedy
Notary Expires: 4/27/2019  #FF 224625

APRIL KENNEDY
MY COMMISSION # FF 224625
EXPIRES: April 27, 2019
Bonded Thru Notary Public Underwriters

Prepared By: B. Ferrito, Mission Global LLC 5701 E. Hillsborough Ave, Ste 2327 Tampa, FL, 33610 (813) 563-6777
When Recorded Return To: B. Ferrito, Mission Global LLC, 5701 E. Hillsborough Ave, Ste 2327, Tampa, FL 33610

Lot 1, Bk 2, Hawleywood 2nd, Benson    23-1431-430

KEN BURKE, CLERK OF COURT
AND COMPTROLLER PINELLAS COUNTY, FL
INST# 2016116549 04/19/2016 at 03:46 PM
OFF REC BK: 19160 PG: 1495-1497
DocType:PA RECORDING: $27.00

_____

*(Space above reserved for Recorder of Deeds certification)*

# Limited Power of Attorney

## Citibank, N.A., not in its individual capacity but solely as Trustee on behalf of NRZ Pass-Through Trust VI

## To

## Fay Servicing, LLC

Return to:
Vantage Point Title
Attention: Default Services
25400 US 19 North, Suite 135
Clearwater, FL 33763

Prepared by:
Valerie Delgado
440 S LaSalle Street, Suite 2000
Chicago, IL 60605

# LIMITED POWER OF ATTORNEY

This Limited Power of Attorney is dated as of March 18, 2016 by CITIBANK, N.A., not in its individual capacity but solely as Trustee on behalf of NRZ PASS-THROUGH TRUST VI, having an office at 388 Greenwich Street, 14th Floor, New York, New York 10013 (the "Owner"), appointing as attorney-in-fact Fay Servicing, LLC, having an office at 440 South LaSalle Street, Suite 2000, Chicago, IL 60605 ("Servicer").

KNOW ALL MEN BY THESE PRESENTS, that the Owner, pursuant to that Amended and Restated Reconstituted Servicing Agreement, dated as of February 19, 2016, by and among the Servicer, NRZ Mortgage Holdings LLC, NRZ Sponsor VI LLC, Credit Suisse First Boston Mortgage Capital LLC, NRZ REO VI Corp., NRZ REO VI-B LLC and Citibank, N.A. (the "Agreement"), hereby constitutes and appoints the Servicer, the Owner's true and lawful Attorney-in-Fact, in the Owner's name, place and stead and for the Owner's benefit, in connection with all mortgage loans and REO properties subject to the terms of the Agreement (the "Assets") for the purpose of performing all acts and executing all documents in the name of the Owner as may be reasonably necessary and appropriate to effectuate any of the following enumerated circumstances.

The Servicer is authorized to act as attorney-in-fact in the following enumerated circumstances:

The Owner hereby appoints the Servicer as its attorney-in-fact, with full power of substitution, to exercise at any time all or any of the following powers: (i) to execute on behalf of the Owner any assignments, endorsements, deeds, documents or other instruments necessary to assign, convey, or otherwise transfer its interest in the Assets; and (ii) to execute on behalf of the Owner any documents necessary to carry out foreclosure or any other servicing-related activity pertaining to an Asset pursuant to the terms of the Agreement.

The undersigned gives said Attorney-in-Fact full power and authority to execute such instruments and to do and perform all and every act and thing necessary and proper to carry into effect the power or powers granted by or under this Limited Power of Attorney, each subject to the terms and conditions set forth in the Agreement as fully as the undersigned might or could do, and hereby does ratify and confirm to all that said Attorney-in-Fact shall lawfully do or cause to be done by authority hereof.

If the Servicer receives any notice of suit, litigation or proceeding in the name of Seller, then the Servicer shall promptly forward a copy of same to the Seller.

Third parties without actual notice may rely upon the exercise of the power granted under this Limited Power of Attorney; and may be satisfied that this Limited Power of Attorney shall continue in full force and effect and has not been revoked unless an instrument of revocation has been made in writing by the undersigned.

IN WITNESS WHEREOF, the Owner has executed this Limited Power of Attorney on the day and year first written above.

NRZ PASS-THROUGH TRUST VI,
by Citibank, N.A., not in its individual
capacity, but solely as Trustee

By: _____
     Valerie Delgado

Its:   Vice President

_____
Witness Anthony Bauza

_____
Witness Jennifer McCourt

STATE OF NEW YORK   )
                    )
COUNTY OF NEW YORK  )

On the 18th day of March 2016, before me, a Notary Public in and for said State, personally appeared Valerie Delgado of Citibank N.A. personally known to me (or proved to me on the basis of satisfactory evidence) to be the persons whose names are subscribed to the preceding instrument and acknowledged to me that they executed the same in their authorized capacities and that by their signatures on the instrument the persons or the entities upon behalf of which the persons acted, executed the instrument as of March 18, 2016.

WITNESS my hand and official seal.

_____
    Danny Lee
    DANNY LEE, NOTARY PUBLIC
State of New York, NO. 01LE6161129
   Qualified in New York County
Commission Expires February 20, 20 [?]

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA
MINNEAPOLIS DIVISION

In re:

Jeffrey Dennis DeHaan

Chapter 13
Case No. 14-44153 (RJK)

MEMORANDUM OF LAW

Debtor.

_____

Citibank, N.A., not in its individual capacity, but solely as trustee of NRZ Pass-Through Trust VI as serviced by Fay Servicing LLC ("Movant") submits this memorandum of law in support of its Motion for Relief from the stay in the above-entitled matter.

**FACTS**

Movant holds a valid, duly perfected mortgage on real property owned by the debtors.  The total unpaid payoff balance due under the mortgage and note as of February 26, 2018 is $340,573.57.

The debtors' confirmed Chapter 13 plan requires the debtors to make post-petition mortgage payments directly to Movant, when due. As of February 26, 2018, the total post-petition delinquency is in the amount of $73,977.06, which represents approximately thirty-six (36) post-petition payments. (See Movant Affidavit and Exhibit B, Local Form 4001-1)  Accordingly, the debtors are in default under the terms of the mortgage and confirmed plan for failure to make timely payments.

**ARGUMENT**

11 U.S.C. § 362(d) provides that on request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under 11 U.S.C. § 362(a) of this Section for cause, including lack of adequate protection of an interest in property of such party in interest. Failure of a Chapter 13 debtor to make post-confirmation payments to a mortgagee is sufficient cause for relief from the automatic stay. *In re Borm,* 508 B.R. 104, 106 (8th Cir B.A.P. 2014); *see also Reinbold v. Dewey County Bank*, 942 F.2d 1304 (8th Cir. 1991); *see also First Federal Sav. & Loan Asso. v. Whitebread,* 18 B.R. 192 (Bankr. D. Minn. 1982).

The debtors have failed to make the regular mortgage payments under the mortgage and confirmed Chapter 13 plan. As the Eighth Circuit Bankruptcy Appellate Panel stated in *In re Martens*,

> The statutory grounds [under 11 U.S.C. §§ 362(d)(1) and (2)] for granting relief from the automatic stay are in the disjunctive. The bankruptcy court must, therefore, grant relief if the movant either proves cause, or proves that there is no equity in the property and that it is not necessary for a successful reorganization. Cause has been defined to mean "any reason whereby a creditor is receiving less than his bargain from a debtor and is without remedy because of the bankruptcy proceeding."

*In re Martens*, 331 B.R. 395, 398 (8th Cir. B.A.P. 2005)(citations omitted). Section 362(d)(1) permits relief from stay for "cause".

> "Cause" as used in § 362(d)(1) has no clear and limited definition and, therefore, is determined on a case by case basis… "Cause" is an intentionally broad and flexible concept that permits the Bankruptcy Court, as a court of equity, to respond to inherently fact-sensitive situations.

*In re Texas State Optical,* Inc., 188 B.R. 552, 556 (Bankr. E.D. Tex. 1995)(citations omitted). The standard for "cause" under § 362(d)(1) is

broad, and may extend beyond one enumerated ground of lack of "adequate protection" as defined by 11 U.S.C. § 361. *In re Lilyerd*, 49 B.R. 109, 116 (Bankr. D. Minn. 1985)

Because the debtors have failed to make the regular post-petition payments under the mortgage and confirmed Chapter 13 plan, "cause" exists within the meaning of § 362(d)(1) to grant relief from the automatic stay.

WHEREFORE, Citibank, N.A., not in its individual capacity, but solely as trustee of NRZ Pass-Through Trust VI as serviced by Fay Servicing LLC respectfully requests this Court to grant Movant relief from the automatic stay of 11 U.S.C. § 362(a).


Dated: April 27, 2018

USSET, WEINGARDEN & LIEBO, P.L.L.P.


By: /E/ Kevin T. Dobie
    Kevin T. Dobie #388322
    Attorney for Movant
    4500 Park Glen Road, #300
    Minneapolis, MN 55416
    (952) 925-6888
    kevin@uwllaw.com

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA
MINNEAPOLIS DIVISION

In Re:

Jeffrey Dennis DeHaan

Chapter 13
Case No. 14-44153 (RJK)

UNSWORN DECLARATION
FOR PROOF OF SERVICE

Debtor.

I, Delight D. Idelburg, employed on this date by USSET, WEINGARDEN, & LIEBO PLLP attorneys licensed to practice law in this court, with office address of 4500 Park Glen Road, Suite 300, Minneapolis, Minnesota 55416, upon penalty of perjury, declares that on April 27, 2018, I served the annexed Notice of Hearing and Motion for Relief from Automatic Stay upon each of the entities named below by mailing to them a copy thereof by enclosing same in an envelope with first class mail postage prepaid and depositing same in the post office at Minneapolis, Minnesota, addressed to each of them as follows:

Jeffrey D. DeHaan                      Coop Credit Union
Sarah K. DeHaan                        1555 Minnesota Ave
400 Sanford Road                       Benson, MN 56215
Benson, MN 56215

and delivered by email notification under CM/ECF on the day e-filed with the court to each of them as follows:

Office of the United States Trustee

 Kyle Carlson, Chapter 13 Trustee

 Robert S. Thyen, Esq.


                              _/E/_Delight D. Idelburg_
                              Delight D. Idelburg

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA
MINNEAPOLIS DIVISION

In re:

Jeffrey Dennis DeHaan

Chapter 13
Case No. 14-44153 (RJK)

Debtor.
_____

**ORDER GRANTING RELIEF FROM STAY**

This case is before the court on the motion of Citibank, N.A.,
not in its individual capacity, but solely as trustee of NRZ Pass-
Through Trust VI as serviced by Fay Servicing LLC,  for relief from
the automatic stay imposed by 11 U.S.C. § 362(a).

Based on the record, the court finds that grounds exist under 11
U.S.C. § 362(d) to warrant relief.

**IT IS ORDERED:**

1. The motion for relief from stay is granted as follows.

2. The automatic stay imposed by 11 U.S.C. § 362(a) is terminated
such that the movant may exercise its rights and remedies under
applicable non-bankruptcy law with respect to the following property
filed in the office of the registrar of titles August 23, 2006 as
document no. 6107 on certificate of title no. 1946:

Lot One (1), Block Two (2), Hawleywood Second Addition, Swift
County, Minnesota.

3. Notwithstanding Fed. R. Bankr. P. 4001(a)(3), this order is
effective immediately.

Dated: _____                    _____
                                       United States Bankruptcy Judge